**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 190023-U

Order filed October 29, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| In re COMMITMENT OF CHRISTOPHER CRICHTON, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-19-0023 Circuit No. 17-MR-1730 |
| v. | ) ) | |
| Christopher Crichton, | ) ) | The Honorable Carmen Goodman |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice Schmidt and Justice Holdridge concurred in the judgment.
_____

**ORDER**

¶ 1    *Held*:   Trial court did not abuse its discretion in committing respondent, a sexually violent person (SVP), to a secure facility where one expert testified that secure facility was least restrictive environment for respondent and other expert admitted that respondent did not meet criteria for conditional release.

¶ 2    The State filed a petition seeking to have respondent Christopher Crichton declared an SVP

under the Illinois Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq*. (West

2016)) and committed to the care of the Illinois Department of Human Services (DHS). The court found probable cause existed to believe that respondent was an SVP, and respondent was evaluated by two experts. Respondent agreed that he fit the criteria of an SVP under the Act. Following a dispositional hearing, at which the expert evaluators testified, the trial court ordered that respondent be committed to the custody of DHS for control, care and treatment in a secure facility. Respondent appeals, arguing that the trial court abused its discretion by not placing him on conditional release. We affirm.

¶ 3                                                      BACKGROUND

¶ 4        In June 2017, the State filed a Petition for Sexually Violent Person Commitment, seeking a declaration that respondent was an SVP and should be committed under the Act. The petition alleged that respondent was convicted of aggravated child pornography and child pornography in 2013. According to the petition, respondent was evaluated by Dr. Vicki Tsoflias, who diagnosed respondent with "Pedophilic Disorder, sexually attracted to males, non-exclusive type." The petition requested that respondent be found an SVP and committed to the care of DHS until he is no longer an SVP.

¶ 5        Following a hearing, the trial court found that there was probable cause to believe that respondent is an SVP and ordered DHS to evaluate respondent. Respondent filed a motion seeking the appointment of an expert, Dr. Lesley Kane, to examine him as well. The trial court granted respondent's motion.

¶ 6        After the experts examined him, respondent signed an agreed order and a "Stipulation and Agreement Without Commitment," stipulating and agreeing that he is an SVP. The court ordered DHS to complete a dispositional evaluation of respondent and appointed Kane to complete a dispositional evaluation on respondent's behalf.

2

¶ 7        In December 2018, a dispositional hearing was held. At the hearing, Dr. Kimberly Weitl, a sex offender evaluator for DHS, testified that she first evaluated respondent in 2011. At that time, she found that respondent met the criteria for an SVP. In April 2018, Weitl evaluated respondent again and found that he still meets the criteria for an SVP.

¶ 8        In considering the appropriate placement for respondent, Weitl considered respondent's criminal history, which included molestation of a five-year-old boy in 2001. After serving time in prison for that crime, respondent was placed in a residential facility, Trinity Services. While on a weekend pass from Trinity, in 2011, respondent took nude photographs of his four-year-old nephew. Respondent reported committing offenses against nine children. Only two of those offenses resulted in criminal charges.

¶ 9        Weitl also considered respondent's disciplinary history, which included infractions for acting out sexually and making false allegations against an officer while in prison. Since June 2017, when respondent was placed in the custody of DHS, respondent has had trouble getting along with other residents and has been involved in fights. In November 2017, respondent committed sexual misconduct. According to Weitl, respondent's conduct shows that he is unable to follow rules.

¶ 10        Weitl also considered respondent's present mental condition. Respondent has been diagnosed with depression, obsessive compulsive disorder, anxiety, and pedophilic disorder. Respondent has refused treatment for his pedophilic disorder. Weitl testified that respondent needs intense treatment. Weitl believes that an inpatient program is necessary to address respondent's treatment needs.

¶ 11        Weitl considered respondent's risk to reoffend using Static-99R and Static 2002R. On the Static-99R, respondent scored a five, which places him in the "above average" risk category. On

the Static 2002R, respondent scored a nine, placing him in the "well above average" risk category. According to Weitl, respondent is 6.9 times more likely to reoffend than typical sex offenders based on his Static 2002R score. Weitl found no protective factors to reduce respondent's risk to reoffend. Weitl concluded that it is much more likely than not that respondent will sexually reoffend in a violent way if he is not confined to a secure facility.

¶ 12     Weitl does not believe that conditional release is appropriate for respondent. She believes that the treatment and detention facility in Rushville is the least restrictive placement for respondent. Respondent has cognitive deficiencies that Weitl believes can be addressed at Rushville. Weitl does not believe any program outside of that facility will meet respondent's needs.

¶ 13     Lesley Kane, a clinical psychologist, evaluated respondent and concluded that he is an SVP as defined by the Act. Kane agreed with many of Weitl's conclusions but disagreed about the appropriate placement for respondent. Kane believes that respondent "could be safely managed on conditional release." Her opinion is based on respondent's 10-year stay at Trinity, a 24-hour supervised residential facility, where he did not commit any "hands-on" offenses. She admitted that respondent committed a sex offense while at Trinity but explained that on conditional release, respondent will not have access to children like he did on a weekend pass from Trinity. According to Kane, on conditional release, respondent "can get treatment while he's under strict supervision and monitoring." Respondent would receive a minimum of 90 minutes of group therapy and 60 minutes of individual therapy per week on conditional release.

¶ 14     When Kane met with respondent, he was not participating in treatment. Kane thought that respondent would "struggle quite a bit" at Rushville because while Rushville has individuals with learning disabilities, there is not a group for intellectually disabled adults, like respondent. According to Kane, respondent is mildly intellectually disabled. Although respondent has never

4

lived independently, which he would do on conditional release, Kane believes that "there is a chance that with all of the supervision that he would receive that he would be able to do that."

¶ 15 On cross-examination, Kane agreed that one of the criteria for conditional release under the Act is that the respondent has made "sufficient progress in treatment." Kane admitted that respondent has not made sufficient progress in treatment and, therefore, has not met the criteria for conditional release under the Act. Kane agreed that respondent suffers from pedophilic disorder and is at "above average" risk to reoffend according to the Static-99 and "well above average" risk based on the Static 2002R. Kane agreed that intensive sex offender treatment, which respondent would receive in Rushville, could help reduce respondent's risk to reoffend. Kane agreed that respondent has violated rules while in prison and at his current treatment facility. Kane believes that respondent could benefit from the structure of an inpatient facility but feels like the treatment at Rushville "is not tailored to meet the needs of individuals that have [respondent's] level of cognitive functioning." She admitted that it is possible that Rushville has recently tailored a program to intellectually disabled individuals, like respondent.

¶ 16 Following the hearing, the trial court found that Weitl's testimony was "more compelling" than Kane's. The court entered an order committing respondent to the custody of DHS for control, care and treatment in a secure setting until further order of the court.

¶ 17 ANALYSIS

¶ 18 The Act authorizes the involuntary civil commitment of an SVP. *In re Detention of New*, 2013 IL App (1st) 111556, ¶ 48; 725 ILCS 207/40(a) (West 2016). The Act defines an SVP as "a person who has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2016). If the State proves beyond a

5

reasonable doubt that an individual is an SVP, the SVP may be indefinitely committed "until such time as the person is no longer a sexually violent person." *Id*. § 35(f), 40(a).

¶ 19     When an individual is found to be an SVP, he shall be committed to DHS. See *id*.     § 40(a). The commitment order shall specify either institutional care in a secure facility or conditional release. *Id*. § 40(b)(2). In determining the appropriate placement for an SVP, the court shall consider the following factors: (1) the nature and circumstances of the respondent's behavior; (2) the respondent's mental history and present mental condition; and (3) what arrangements are available to ensure that the respondent has access to and will participate in necessary treatment. *Id*. The court may also consider the respondent's prior participation in treatment and past violations of rules, regulations and orders. *In re Commitment of Trulock*, 2012 IL App (3d) 110550, ¶ 53.

¶ 20     A trial court's decision to commit an SVP to institutional care in a secure facility is reviewed for an abuse of discretion. *Id*. ¶ 52. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the court. *Id*.

¶ 21     Here, the trial court heard testimony from two experts, Weitl and Kane. Weitl testified that the least restrictive environment for respondent is a secure facility, while Kane opined that conditional release was appropriate. Nevertheless, both experts agreed that respondent suffers from pedophilia and is at a high risk for reoffending according to actuarial instruments. Both experts also testified that respondent violated rules while in prison and in a residential facility. Respondent has also refused to participate in therapy, which Kane admitted makes respondent ineligible for conditional release. Based on the evidence presented at the hearing, the trial court did not abuse its discretion in ordering respondent to institutional care in a secure facility, rather than placing him on conditional release.

¶ 22                                   CONCLUSION

¶ 23          The judgment of the circuit court of Will County is affirmed.

¶ 24          Affirmed.